## OIL WELL SUPPLY CO. et al. v. CREMIN et al.

No. 18902. Opinion Filed March 18, 1930,

Rehearing Denied April 29, 1930.

Ames, Cochran & Ames and George W. Reed, Jr., for plaintiffs in error.

G. C. Spillers, for defendants in error.

ANDREWS, J. The facts out of which this controversy arose are substantially as follows:

Henry R. Cline was the owner of an undivided one-half interest in certain real estate situated in the city of Tulsa, Okla. He died unmarried, intestate and without issue. M. E. Cline, one of his brothers, was

appointed administrator of his estate, qualified as such, and took charge of the property of the estate. Five days after the death of Henry R. Cline, his mother, Ruby Cline, died intestate and M. E. Cline was appointed administrator of her estate, qualified as such, and took charge thereof. She left surviving her her two children, M. E. Cline and John F. Cline, and other children.

Thereafter the Oil Well Supply Company recovered a judgment against M. E. Cline in the district court of Tulsa county, Okla. The judgment was regularly entered on the judgment docket and was kept alive by the issuance of executions. The judgment was thereafter assigned to W. B. Caraway, who now appears to be the owner. No levy was made on the property in question.

Thereafter M. E. Cline, as administrator, filed his final account, which showed that the claims against the estate had been paid and that the estate was ready for settlement and distribution. The report further stated:

"Your petitioner further shows that said estate, as will be seen from this report, is of such a character and form that it cannot be distributed in kind, that it will. be necessary to sell said property of said estate in partition, or to have the same assigned to some one of the heirs as provided by law, in order to make distribution"

—and prayed, among other things, that commissioners he appointed to make distribution, and that if, upon their report, it was found that partition in kind could not be had, the property be sold or set aside to one of the heirs.

Commissioners were appointed to appraise the property and fix its true value. They reported that it could not be divided in kind and recommended that the same be assigned to one of the heirs.

John F. Cline accepted the property at its appraised value, and thereupon the judge of the county court made an order confirming the report of the commissioners and approving the assignment of the property in question to him. That order recited, among other things:

"And the said above described real estate is so confirmed, assigned and transferred to the said John F. Cline, absolute, forever, to him and his heirs under and by virtue of this decree and confirming order."

Thereafter John F. Cline conveyed the property, by mesne conveyances, to the defendants in error, who will be hereinafter referred to as plaintiffs. Plaintiffs went into quiet and peaceable possession of the property and remained in possession thereof until the year 1926, when W. B. Caraway caused an execution to be issued directed to the sheriff of Tulsa county, who attempted to seize and levy upon the property under said execution.

The plaintiffs thereupon filed a suit in the district court of Tulsa county against the judgment creditor, its assignee, and the sheriff to quiet the title to the property against any claims growing out of said judgment and to enjoin the enforcement thereof against said property. As a part of the stipulation under which the cause was submitted we quote the following:

"It is further stipulated and agreed between the parties hereto that all necessary legal notices were given in accordance with the laws of the state of Oklahoma, in said probate proceedings for the purpose of administering said estate and distributing the assets; that all notices were given as required by the laws of the state of Oklahoma, or waivers signed and entered by the heirs for the purpose of partitioning and assigning said property in final distribution of said estates, in view of the fact that said property could not have been partitioned in kind without prejudice to those entitled to share therein; but that no other summons or notice or notices was served upon or given to the Oil Well Supply Company, judgment creditor of M. E. Cline, except such notices as were posted or published in said probate proceedings."

At the conclusion of the trial the court found that the property was wrongfully levied upon and that the judgment was a cloud upon the title of the plaintiffs, and by its judgment quieted the title of the plaintiffs and enjoined the enforcement of said judgment against the said property.

From that judgment the defendants appealed and they appear here as plaintiffs in error. They will be hereinafter referred to as defendants.

The seven assignments of error are presented in a terse statement, as follows:

"Does a judgment rendered against an heir of an intestate decedent become a lien on the interest of that heir in real property inherited by the heir from the decedent, where the judgment against the heir is rendered and docketed after the death of the decedent and while administration proceedings are pending, and before the decedent's property is distributed by the county court in the probate proceedings, and where there are sufficient funds in the estate to pay all debts of the decedent and costs of administration?

"The court below answered this question in the negative, and plaintiffs in error contend that it should be answered in the affirmative, and if plaintiffs in error are

right in their contention, then this case should be reversed and judgment rendered in favor of the plaintiffs in error."

Defendants cite that portion of section 690, C. O. S. 1921, reading as follows:

"Judgment of courts of record of this state except county courts, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered from and after the time the judgment is entered on the judgment docket"

—and say:

"Under the above statute, if M. E. Cline owned any real estate in Tulsa county at the time of the rendition of the judgment against him in favor of the plaintiffs in errror, then the judgment became a lien upon that real estate."

They rely upon section 11300, C. O. S. 1921, which is as follows:

"The property, both real and personal, of one who dies without disposing of it by will passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration."

It will be noted that under the provisions of section 11300, supra, the property involved in this action passed to the heirs of the intestate "subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration." If M. E. Cline acquired an interest in the real estate that is superior to the right of control thereof by the county court, the judgment of the trial court is erroneous. If the interest acquired by M. E. Cline in the real estate was subject to the control of the county court and to partition proceedings in that court, the exercise of that control by the county court and the partition proceedings cannot be interfered with by M. E. Cline or any assignee or creditor of M. E. Cline, and the judgment of the trial court should be affirmed.

There is no question here of the right of an heir to alienate his interest in the property "subject to the control of the county court and to the possession of any administrator appointed by that court for the purpose of administration."

There is no question here of the right of an heir or his creditor, after the county court has distributed the real estate and has given the heir a specific portion thereof, to enforce his judgment against the real estate so distributed to the heir.

A judgment creditor of an heir has no greater rights than the heir.

"The judgment lien contemplated by section 5148, Rev. Laws 1910, is a lien only on the actual interest of the judgment debtor, whatever that may be." Guaranty State Bank of Okmulgee v. Pratt, 72 Okla. 244, 180 Pac. 376.

We think that it is unnecessary to cite further authority to the effect that if the proceeding in the county court in this case is sufficient to bar the claims of the heirs to this estate, it is sufficient to bar the claims of judgment creditors of the heirs.

The question to be determined here is whether or not the county court, during the administration of an estate, and prior to the distribution thereof to the heirs, can partition the real estate in accordance with the probate partition proceedings authorized by the statutes.

Under section 13, art. 7, of the Constitution, the county court is given the general jurisdiction of a probate court and authority to "* * * transact all business appertaining to the estates of the deceased persons, * * * including the sale, settlement, partition, and distribution of the estates thereof." The county court has jurisdiction and power "* * *which must be exercised in the cases, and in the manner prescribed by statute:

* * *To order the sale of property of estates. * * * To order the payment of debts due from estates. * * *To order and regulate all distribution of property or estates of deceased persons.* * *To exercise all the powers conferred by this article or by other law.

* * *To make such orders as may be necessary to the exercise of the powers conferred it." Section 1079, O. O. S. 1921.

The county court, under the provisions of section 12, art. 7, of the Constitution of Oklahoma, has original jurisdiction in all probate matters co-extensive with the county, and it is provided in that section that the county court shall not have jurisdiction to "* * *order or decree the partition or sale of real estate, not arising under its probate jurisdiction." It will be noted that the language of this section is "partition or sale."

There are no other constitutional provisions with reference to the jurisdiction of a county court to "partition or sell" real estate, and since the adoption of the Constitution the county courts, in the exercise of their probate jurisdiction, have never refused to order or decree the sale of real estate where a proper showing therefor was made. Under the plain language of those provisions, the county court has as much authority to partition real estate under its

probate jurisdiction as it has to sell real estate under its probate jurisdiction.

Pursuant to that constitutional authority the Legislature has seen fit to provide a procedure for the sale of real estate and for partition of real estate by the county court under its probate jurisdiction.

Sections 1364 to 1374, inclusive, C. O. S. 1921, appear as a part of chapter 5 of art. 11, under the heading of "Distribution and Settlement of Estates," and provide a procedure for the partition of real estate in probate. Under the stipulation of facts herein, that procedure was followed in this case, except that under the stipulation no summons or notice was served upon or given to the Oil Well Supply Company, except by posting and publication in the probate proceedings.

The provisions of section 1369, supra, were followed in this case, and under those provisions, upon the confirmation of the report of the commissioners, "* * * the title to the whole of such real estate vests in the person to whom the sale is so assigned."

The question here presented is one of first impression in this court and our attention is called to no case that we consider to be in point. The defendants cite a number of cases dealing with the voluntary transfer by an heir of real estate thereafter decreed by the county court to belong to that heir, but they cite no cases where a partition was made under the lawful probate procedure as was done in this case.

Our Probate Code provides for a distribution of the estate (section 1359, C. O. S. 1921), and makes the order or decree of the county court conclusive as to the rights of the heirs, subject only to be reversed, set aside, or modified on appeal. (Section 1360, C. O. S. 1921.) Distribution is made on petition, and notice thereof is required to be given by posting or publication, as the court may direct. Section 1362, C. O. S. 1921. It is therein provided that "If partition be applied for, as provided in this article, the decree of distribution shall not divest the court of jurisdiction to order partition unless the estate is finally closed."

Under the provisions of section 1365, C. O. S. 1921, notice of the application for partition

"* * *thereof must be given to all persons interested,* * * or their guardians, and to the agents, attorneys, or guardians, if any in this state, of such as reside out of the state, either personally or by public notice, as the county court may direct."

It will be noted that either personal or publication notice is authorized. In this case it is agreed that the notices required by the statutes were given, and it is contended that no summons or notice was served upon or given to the Oil Well Supply Company except such notice as was posted or published in the probate proceeding. Since the county court is authorized to direct publication notice rather than personal notice, under the stipulation, it cannot be contended that the statutory notice was not given. We find nothing in the statute that requires the personal service of a summons or notice upon the judgment creditor. It would seem that any notice sufficient to authorize the partition of the estate would be sufficient to authorize the partition of the same notwithstanding the record of a judgment against one of the heirs.

The case of Martinovich v. Marscano (Cal.) 70 Pac. 459, cited by the defendants, is not in point. There the devisee, prior to distribution, conveyed her share in the property to another. There was no partition of the property by order of the county court.

In re Miles Estate (Utah) 223 Pac. 337, involved a voluntary conveyance by an heir and not a conveyance under the probate practice of the state.

The Oklahoma cases cited by the defendants, Eller v. Noah, 66 Okla. 222, 168 Pac. 819, Trower v. Wetmore, 123 Okla. 81, 252 Pac. 48, In re Hibdon's Estate, 102 Okla. 145, 228 Pac. 154, and the cases cited by the defendants from other states, are not in point for none of them involve a title based upon probate partition proceedings. Some of those cases follow the rule announced in Re Hill's Estate (Cal.) 168 Pac. 20, wherein that court said that the title immediately passed to the heirs and could not be divested "except for some purpose of administration." In some states the right of administration is limited to payments of debts against the estate, but in Oklahoma the right of administration is not limited to the payment of debts against the estate and includes partition and distribution thereof.

The true rule is stated by the Supreme Court of California in the case of Wood v. Curran, 33 Pac. 774, wherein that court said:

" 'Upon the death of an intestate his property goes by succession to his heirs, subject to administration. The objects of administration are: (1) To support the family for a period; (2) to set apart a homestead to the family; (3) to pay the expenses of administration; (4) to pay the debts of the deceased; (5) to distribute

the balance of the estate to those who take it by law.' Estate of Moore, 57 Cal. 437. So, where the heirs of the deceased executed a mortgage upon property inherited from him, it was held that the purchaser at the foreclosure sale acquired no greater or higher right in the mortgaged premises than the mortgagors held, and that the property in his hands was subject to the orders and proceedings of the probate court as fully in all respects as if the mortgage had not been foreclosed."

The same court in William Hill Co. v. Lawler, 48 Pac. 323, said:

"A proceeding for distribution is in the nature of a proceeding in rem, the res being the estate which is in the hands of the executor under the control of the court, and which he brings before the court for the purpose of receiving directions as to its final disposition. By giving the notice directed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate; and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appear and present his claim, or fail to appear, the action of the court is equally conclusive upon him, 'subject only to be reversed, set aside, or modified on appeal.' The decree is as binding upon him if he fail to appear and present his claim as if his claim after presentation had been disallowed by the court. In re Griffith's Estate, 84 Cal. 107, 23 Pac. 528, and 24 Pac. 381; Daly v. Pennie. 86 Cal. 552, 25 Pac. 67. The grantee of an heir or devisee, or any person who claims under an heir or devisee, is bound by the decree as fully as would be the heir or devisee himself if he had not made the conveyance. Section 1678, Code Civ. Proc., provides: 'Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees, or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same in the same manner as they otherwise would have been to such heirs, legatees, or devisees.' The provisions of this section extend to the distribution as well as to the partition which is provided in that chapter, and render the decree as conclusive upon those to whom the heirs have conveyed the estate as it 'otherwise would have been upon such heirs, legatees or devisees'; and the decree is equally conclusive whether the estate is distributed to the persons in segregated parts or in undivided proportions."

It will be noted that section 1367, C. O. S. 1921, is identical with section 1678 of the California Code quoted in that decision.

That court, in Gutter v. Dallamore, 79 Pac. 383, held:

"Where the interest of an heir in land belonging to an estate was mortgaged pending administration, and the land was sold under order of the court in probate proceedings, the purchaser's title related back to the time of the death of the deceased owner, and conveyed her title as it then existed, freed from the mortgage, under Code Civ. Proc. sec. 1555, providing that conveyances so made shall convey all the right, title, interest, and estate of the deceased in the premises at the time of his death."

Such is our statute, section 1285, C. O. S. 1921.

The rule is also stated in 24 Corpus Juris, 696, from which we quote:

"An administration sale under order of the court will divest the title of the purchaser from the heirs or devisees of the land as well as the lien of mortgages given by the heir or devisee or judgments against him."

And, again, in 34 Corpus Juris, 598, the rule is stated in this language:

"Interest of Co-tenants. A judgment against a tenant in common is a lien upon the interest of the debtor in the land, and in case of partition the lien will attach to the part allotted to the defendant in the judgment, or, if the land is sold on partition, to his share of the fund, the purchaser under a decree for partition taking the land discharged of the lien."

Defendants cite the case of Yeaton v. Barnhart (Ore.) 150 Pac. 742, 152 Pac. 1192, and in that case the court said:

"When the petition for leave to sell the real property was filed, the judgment obtained by the defendant Barnhart against the defendant Lena Yeaton was a lien on her inherited interest in the premises. A sale of that interest to pay her father's indebtedness extinguished the lien, notwithstanding which the holder thereof could have enforced his demand against her distributive share of the estate, which right he did not elect to exercise. As the proceedings undertaken to sell the real property were not void, his remedy is now limited to a recovery against Mrs. Yeaton and her husband, and he has no legal claim against the plaintiff's premises."

We agree with that holding that a judgment duly entered is a lien on the **inherited interest of the judgment debtor,** but it is a lien only on that interest and is not a lien upon the land itself, and becomes a lien only upon the land distributed to the judgment debtor, at which time it relates back to the time of its entry on the judgment docket.

If the land is never distributed to the judgment debtor, the lien can never attach.

The defendants concede that the county court has the right to sell the real estate for the purpose of paying the debts of the decedent and that the county court has the right to determine who are the heirs and what interest the heirs take in the property of the decedent. Since the county court is conceded to have those rights, it necessarily follows that the county court, by the exercise thereof, may defeat the claims of a judgment creditor against one of the heirs by ordering the property sold for the payment of debts, by determining that the judgment debtor .is not an heir, and by determining that the judgment debtor is not entitled to any of the real estate in kind. We think the authority of the county court includes the right to distribute the property to the heirs, in kind, to order a sale of the property and distribute the proceeds thereof to the heirs, or to set aside all of the property to one of the heirs at the appraised value under the probate partition procedure.

If the theory of the defendants is correct, the orderly process of administration and distribution of an estate cannot be followed where there is a judgment against one of the heirs. We refuse to announce any such rule in Oklahoma and prefer to say that a judgment against one of the heirs cannot operate to defeat the orderly administration and distribution of an estate.

We, therefore, hold that the county court, under the Constitution and statutes of Oklahoma, has jurisdiction and power to partition the real estate belonging to the estate, in the manner therein provided, and that a , purchaser thereof, either at a sale or by paying the appraised value thereof, takes a title thereto which relates back to the date of the death of the decedent, free and clear of any lien of any judgment against any of the heirs of the decedent.

The judgment of the trial court is affirmed.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and RILEY, J., absent.

Note.—See "Courts," 15 C. J. §422, p. 1010, n. 53. "Executors and Administrators." 24 C. J. §1362, p. 510, n. 99. "Judgments," 34 C. J. §890, p. 582, n. 59; §903, p. 591, n. 55; §915, p. 598, n. 27.