**UNITED STATES v. BOND et al.**

**No. 1873.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 26, 1939.

Norman MacDonald, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Whitfield Y. Mauzy, U. S. Atty., of Tulsa, Okl., Thomas Harris and Abraham Glasser, Attys., Department of Justice, both of Washington, D. C., on the brief), for appellant.

James J. Mars, of Sapulpa, Okl., for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The question is whether land which was allotted to an enrolled full-blood Creek Indian, which was subsequently designated as tax-exempt, which was devised by will of the allottee, and which passed at her death, was subject to partition sale by the county court in the course of the administration and settlement of her estate.

Sah-ta-quan-nay, a full-blood enrolled Creek Indian, was allotted eighty acres of land in Creek County, Oklahoma. During her lifetime the land was designated as tax-exempt under the authority of the Act of May 10, 1928, 45 Stat. 495, and the Secretary of the Interior did not remove the restrictions against alienation. The allottee died testate in 1936. Under the terms of her will the land was devised to two nephews and a niece, in equal undivided parts. The niece predeceased the allottee and her interest was inherited by her son and sole heir. One nephew is an enrolled full-blood Creek Indian, the other nephew and the son of the deceased niece are unenrolled full-bloods. The will of the allottee was probated in the county court of Creek County. During the process of administration and settlement of the estate the court ordered and directed that

the land be partitioned by sale and distribution of the proceeds. It was sold; C. E. Bond and Nellie Bond were the purchasers; the sale was confirmed; and the deed was executed and delivered.

Bond and his wife filed this suit in the state court to quiet title. The nephews, the son of the deceased niece of the allottee, and an oil company holding and owning an oil and gas lease on the land, were joined as defendants. The United States intervened, and removed the case to the United States Court for Northern Oklahoma under the provisions of the Act of April 12, 1926, 44 Stat. 239, and thereafter challenged the validity of the sale at which plaintiffs purchased, on the ground that restricted and tax-exempt land passing by will to full-blood Indian heirs was not partitionable in the county court. The court found for plaintiffs, 25 F.Supp. 157. Judgment was entered accordingly, from which the United States appealed.

■ Section 12, Article 7 of the Constitution of Oklahoma, provides that the county court shall have original jurisdiction in all probate matters coextensive with the county, but not to order or decree the partition or sale of real estate not arising under its probate jurisdiction; and section 13 provides that such court shall transact all business appertaining to the estates of deceased persons, including the partition thereof. Section 1363, Oklahoma Statutes 1931, 58 Okl.St. Ann. § 641, provides that when an estate, real or personal, assigned by the decree of distribution to two or more heirs, devisees, or legatees, is in common and undivided, and the respective shares are not separated and distinguished, partition or distribution may be made by three disinterested persons to be appointed commissioners for that purpose by the county court or judge; section 1364, 58 Okl.St. Ann. § 642, provides that such partition may be ordered and had in the county court on the petition of any person interested; and section 1370, 58 Okl.St.Ann. § 648, provides that when it appears to the court from the report of the commissioners that the land belonging to an estate cannot be otherwise fairly divided, and should be sold, the court may order the sale, in whole or in part, by the executor or administrator, or by a commissioner appointed for that purpose. The jurisdiction of the county court to direct the partition of land belonging to an estate

in the course of administration and settlement is thus conferred, and has been expressly upheld. Oil Well Supply Co. v. Cremin, 143 Okl. 57, 287 P. 414, 68 A.L.R. 1471; In re Porter's Estate, 183 Okl. 511, 83 P.2d 541.

■ Whether such jurisdiction extends to restricted and tax-exempt land of a full-blood Creek Indian which passed by will on her death to full-blood devisees depends upon the controlling acts of Congress. The Act of April 26, 1906, 34 Stat. 137, concerns itself with the Five Civilized Tribes. Section 23 provides that every person of lawful age and of sound mind may by last will and testament devise and bequeath his estate. Section 1 of the Act of May 27, 1908, 35 Stat. 312, provides that all allotted lands of an enrolled full-blood member of such tribes shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, unless restrictions are removed by the Secretary of the Interior under such rules and regulations as he may prescribe; and section 9 provides, among other things, that the death of an allottee shall operate to remove all restrictions upon the alienation of the allottee's land, provided that no conveyance of any interest of any full-blood Indian heir in such land shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of the deceased allottee. Section 1 of the Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. § 375, relates to a proceeding in the county court for the purpose of determining and adjudicating the question of fact as to who are the heirs of a deceased allottee. Section 2, 25 U.S.C.A. § 355, provides that the lands of full-blood members of the tribes are made subject to the laws of the State of Oklahoma providing for the partition of real estate; that any land allotted in such proceedings to a full-blood Indian, or conveyed to him upon his election to take it at the appraisment, shall remain subject to all restrictions upon alienation and taxation obtaining prior to partition; and that in case of a sale under any decree, or partition, the conveyance shall operate to relieve the land of all restrictions of every character.

■■ It is argued that section 2 of the Act of June 14, 1918, supra, is confined to proceedings in the district courts of the state relating to partition of lands of living Indians; that it has no reference to partition in the county courts in the proc-

ess of settlement and administration of estates of deceased Indians. Resort is had to the title and to the text of the section to support the contention. The title recites that it is an act to provide for a determination of heirship of deceased members of the tribes, and conferring jurisdiction upon district courts to partition lands belonging to full-blood heirs of allottees, and the text provides that the lands of full-blood Indians are made subject to the laws of the state providing for partition of real estate. But it must be presumed the Congress was well aware of the frequent and common need for the partition of lands by sale and distribution of the proceeds in the settlement and administration of estates, and was cognizant of the existing law in Oklahoma which conferred jurisdiction upon county courts to order such partition in the course of such settlement and administration, either in kind or by sale and distribution of the proceeds. The wide sweep of the language contained in the statute expressly subjecting the lands of full-blood Indians to the laws of the state for partition fails to indicate a legislative purpose to limit the grant or consent of jurisdiction to district courts in proceedings affecting lands of living Indians, to the exclusion of proceedings in the county court in the administration and settlement of estates of deceased full-bloods. No sound reason has been advanced and none suggests itself why Congress should desire to extend consent to the exercise of jurisdiction by the district courts in the one instance and to withhold such consent from the county courts in the other. To hold that the statute fails to contemplate both partition in the district courts, and partition in the county courts in the course of administration of estates as authorized by the relevant provisions of the constitution and statutes of the state, would be to give it a strained construction not required or warranted. And the concluding language in the section is clear. It provides that in case of a sale in partition, the conveyance shall operate to relieve the land of all restrictions.

██ The remaining contention is that even if the statute as originally enacted be construed to apply to the partition and sale of restricted and tax-exempt land by the county court, it has been restricted and limited in such manner and to such extent that land of that character is no longer partitionable under its provisions. The Act of May 10, 1928, supra, is relied upon to sustain the contention. That act extends the period of restrictions against alienation to April 26, 1956. Section 1. It repeals, effective April 26, 1931, that part of section 9 of the Act of May 27, 1908, supra, as amended by section 1 of the Act of April 12, 1926, supra, which provides that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving born after March 4, 1906, the homestead of the deceased allottee shall remain inalienable, unless restrictions against alienation are removed by the Secretary of the Interior, for the use and support of such issue during their life or lives, until April 26, 1931; that if no such issue survive, the allottee, if an adult, may dispose of his homestead by will free of restrictions; that if this be not done, or in the event the issue specially provided for shall die before April 26, 1931, the land shall descend to the heirs according to the laws of descent and distribution of the state, free from all restrictions. And it—the Act of 1928—further provides that on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of such tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma; that the one hundred and sixty acres shall be designated in the manner prescribed; and that it shall remain exempt while title remains in the Indian or in any full-blood Indian heir or devisee of the land, but not beyond the period of restrictions provided in the act. Section 4. If the statute stopped there it might lend support to the contention advanced. But it does not end there. Section 5 expressly provides that the act shall not be construed to reimpose restrictions theretofore or thereafter removed by the Secretary of the Interior or by operation of law. The provision that the act shall not be construed as reimposing restrictions theretofore removed by operation of law is broad enough to include restrictions removed by partition sale in administration proceedings in the county court. Thus the statute not only fails to indicate a purpose to impinge upon the jurisdiction of the county court to order and direct partition and sale of restricted land in the course of administration and settlement of the estate of an allottee, with conveyance free of restrictions; but it points to Congressional recognition of the existing jurisdiction to remove restrictions in that manner and a

desire that it be continued without interference.

 Emphasized reliance is placed upon the first proviso contained in section 1 of the Act of January 27, 1933, 47 Stat. 777, to support the contention. The basic provision in the section provides that all funds and securities then held or thereafter coming under the supervision of the Secretary of the Interior, belonging to members of the Five Civilized Tribes of one-half or more Indian blood are declared to be restricted and shall remain subject to the jurisdiction of the Secretary until April 26, 1956, subject to expenditure for certain specified purposes. The general provision is followed immediately by the proviso in question. It provides that where the entire interest in any tract of restricted and tax-exempt land belonging to a member of such tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for restricted Indians, such land shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians, but not later than April 26, 1956, unless restrictions are removed in the meantime in the manner provided by law. While the proviso does not except anything from the general enacting provision, and neither qualifies nor restrains its generality, it must be given effect as independent legislation. But given that effect, it does not narrow that part of the Act of 1918, supra, which consents to the making of the lands of full-blood members of the Five Civilized Tribes subject to the laws of the State of Oklahoma relating to the partition of real estate. Instead, it provides that the restrictions there imposed upon restricted and tax-exempt land belonging to a member of such tribes which is acquired by or for restricted Indians by inheritance, gift, or purchase with restricted funds, shall remain restricted during the period fixed therein, unless the restrictions are removed in the meantime in the manner provided by law. At least two separate and distinct methods existed at that time for the removal of restrictions against alienation. One was by the Secretary of the Interior, and the other was by partition and sale in the county court in the course of the administration and settlement of the estate of a deceased full-blood Indian. The concluding language in the proviso is plainly broad enough to include both. Thus Congress again painstakingly indicated a desire not to impinge upon the power to remove restrictions in any manner then authorized by law but to recognize any such method and to signify a desire that it be unaffected.

The judgment is affirmed.