## WHELAN v. ENTERPRISE TRANSP. CO.

(Circuit Court, D. Massachusetts. December 28, 1909.)

No. 405.

CORPORATIONS (§ 566*) — INSOLVENCY AND RECEIVERS — TRANSPORTATION COMPANIES—PRIORITIES OF CLAIMS.

In the distribution of the assets of an insolvent steamship company, claims of connecting transportation companies for traffic balances due from defendant on account of joint freights collected by it are not entitled to priority of payment over claims of other unsecured creditors, in the absence of any agreement creating a trust relation between the parties, but such claimants are entitled to freights collected on their behalf by the receiver after his appointment.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*]

In Equity. Suit by John P. Whelan against the Enterprise Transportation Company. On exceptions to master's report. Modified and confirmed.

See, also, 164 Fed. 95.

Albion L. Millan, Morse & Friedman, and Brandeis, Dunbar & Nutter, for complainant.

Dickinson & Dickinson, Samuel Williston, Hill, Barlow & Homans, James H. Vahey, and Vahey, Innis & Mansfield, for defendant.

Curtis, Mallet-Prevost & Colt (Alfred H. Strickland, of counsel), for intervening petitioner Clyde S. S. Co.

LOWELL, Circuit Judge. The Clyde Steamship Company and the Dominion Steamship Company, intervening petitioners, have filed exceptions to the master's report, which denied priority to their claims. The Enterprise Transportation Company, the insolvent respondent, owed these petitioners traffic balances, having collected from consignees the freight due partly to itself and partly to the petitioners. The Enterprise Transportation Company delivered the goods and afterwards collected the freight. For those traffic balances the petitioners seek priority over the other unsecured creditors. The petitioners' contention rests upon two grounds: (1) That the respondent held the petitioners' share of the freight collected as a trust fund of which the petitioners were beneficiaries; (2) that a line of cases, most of them decided in the federal courts, of which Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, is deemed the prototype, have allowed priority to debts like the petitioners' in the distribution of insolvent estates made by receivers.

1. In the case at bar I can find no sufficient evidence of a trust relation existing between the petitioners and the respondent. The master has found that it did not exist, and that, upon the evidence, the petitioners accepted the respondent as their debtor, and not as their trustee. In this finding I concur as a finding of fact.

2. The general rule of the distribution of an insolvent estate, so far as it is unincumbered, divides it ratably among the creditors. The creditor who has suspected his debtor's solvency, and so has kept his claim small, ordinarily gets the same percentage of payment as does the most credulous creditor, who has permitted his claim to become

very large. The insolvent may have incidentally used the money of the latter to reduce the claim of the former; but, apart from preferences or fraud, this fact usually gives the latter no priority. Cases of especial hardship, however, have led some courts of authority to order the payment of certain unsecured claims out of the fund which would otherwise have been applied to the payment of mortgage creditors. In considering the matter, this court need not look much beyond the cases decided in the Supreme Court, as these have been numerous, and as in Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717, the Supreme Court disapproved the decisions of several courts of appeals. Even the Court of Appeals for this Circuit was said by the Supreme Court to have made in New England R. R. Co. v. Carnegie Steel Co., 75 Fed. 54, 58, 21 C. C. A. 219, "an evidently unwilling application" of an erroneous impression.

An examination of the cases in the Supreme Court from Fosdick v. Schall to Gregg v. Metropolitan Trust Co. shows that in them the question always arose between certain general creditors and the mortgagee. Wallace v. Loomis, 97 U. S. 146, 162, 24 L. Ed. 895; Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419; Miltenberger v. Logansport R. R., 106 U. S. 286, 308, 1 Sup. Ct. 140, 27 L. Ed. 117; Union Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488; Teal v. Walker, 111 U. S. 242, 591, 4 Sup. Ct. 420, 23 L. Ed. 415; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Penn v. Calhoun, 121 U. S. 251, 7 Sup. Ct. 906, 30 L. Ed. 915; Sage v. Memphis R. R., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694; Union Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825; Wood v. Guarantee Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472; Kneeland v. American Loan & Trust Co., 136 U. S. 89, 96, 10 Sup. Ct. 950, 34 L. Ed. 379; Morgan's Co. v. Texas R. R., 137 U. S. 171, 196, 11 Sup. Ct. 61, 34 L. Ed. 625; Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; Lackawanna Co. v. Farmers' Co., 176 U. S. 298, 20 Sup. Ct. 363, 40 L. Ed. 475. In Virginia Coal Co. v. Central R. R., 170 U. S. 355, 365, 18 Sup. Ct. 657, 661, 42 L. Ed. 1068, it was said:

"Indebtedness, as between the party furnishing the materials and supplies and the holders of bonds secured by a mortgage upon the property, is a charge in equity on the continuing income."

And on page 368, of 170 U. S., on page 662 of 18 Sup. Ct. (42 L. Ed. 1068):

"A superior equity arose in favor of the materialman as against the mortgage bonds in the income arising both before and after the appointment of a receiver."

While the facts in this case were unlike those in the case at bar, the quotations are made to show that payment for supplies was ordered upon the ground of an equity existing as against a mortgagee and not upon the ground of an abstract priority among general creditors. Again, in Southern R. R. v. Carnegie Steel Co., 176 U. S. 257, 285, 20 Sup. Ct. 347, 358, 44 L. Ed. 458, the Supreme Court said that a railroad mortgagee—

"impliedly agrees that the current debts of a railroad company contracted in the ordinary course of its business shall be paid out of current receipts before he has any claim upon such income."

And also:

"That when current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use."

Throughout this case also, while in other respects it differed from the case at bar, the court clearly pointed out that the right of priority existing in the unsecured creditor arose from an equitable charge as against the mortgage creditors, and not upon his rank among creditors unsecured. In any case where a general creditor prevailed against a mortgagee, the former was held to have an equitable claim to priority as against the latter in the distribution of some fund which would otherwise have been disbursed for the latter's benefit. A debt for traffic balances might thus be considered payable from operating expenses in preference to mortgage bonds; but it has not been held that a debt for traffic balances is thus payable in preference to debts for fuel, wages, and other supplies, debts which are ordinarily paid from the current receipts of a railroad. No doubt it appears strange that a claim which is superior to a mortgage bond is yet but equal in rank to an ordinary debt. The anomaly arises from the fact that the priority of any claim as against a mortgage rests upon a duty of the mortgagee to contribute to the payment of the claim, not upon its priority in the general distribution of the estate. This distinction is well illustrated in the case at bar. The petitioners here do not seek to postpone the payment of the mortgage debt to their claim. As creditors for operating expenses they seek payment before other unsecured creditors. But an examination of the papers in the case shows that many of the other creditors whose payment the interveners seek to postpone are likewise creditors for operating expenses. There was no question of receivers' certificates issued to pay debts which the receiver was authorized by the court to incur. Union Trust Co. v. Illinois Midland R. R. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963. There was here no provision in the order appointing the receiver which gave preference to the payment of any debt. In the absence of such a provision, the Supreme Court has never, so far as this court has found, decreed priority among claims in general to any claim against the insolvent, except perhaps one for wages recently earned, an exception which is admitted, so far as it is admitted, for peculiar reasons. The case at bar has thus far been treated as if the rules of priority which prevail in the distribution of the property of a railroad, when administered by a receiver, apply to the case at bar, where the respondent is not a railroad but a steamship company. The court does not find it necessary to decide this point, which the Supreme Court left open in Wood v. Guarantee Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472.

A part of the claim of one of the petitioners is based upon a traffic balance arising from the collection of freight, not by the respondent,

but by the receiver. Some money due the respondent at the time of the receiver's appointment was taken in garnishment proceedings, and so did not come into the receiver's hands; this is beyond the petitioner's claim. As to the rest, the master has found that the traffic balance became a debt due from the respondent to the petitioner before collection, and so the petitioner is entitled only to ratable payment. But the respondent hardly intended to make itself liable for these balances before actually collecting the freight.

So far, therefore, as the receiver has in his hands money collected by himself for joint freight, I hold that the petitioner is entitled to recover its share of the money. In other respects, the master's report is confirmed.