**BANKERS' TRUST CO. et al. v. FLORIDA EAST COAST RY. CO. (ATLANTIC COAST LINE R. CO., Intervener).**

No. 757.

District Court, S. D. Florida, Jacksonville Division.

Dec. 31, 1934.

Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., for plaintiffs.

Robert H. Anderson, of Jacksonville, Fla., for receivers.

Doggett & Doggett, of Jacksonville, Fla., for intervener.

STRUM, District Judge.

On August 31, 1931, in a common creditor's suit, equity receivers were appointed to manage and operate the properties of Florida East Coast Railway Company. That suit has now been consolidated with, and the same receivers appointed in, a subsequent suit instituted by Bankers' Trust Company, and another, to foreclose certain interest coupons attached to corporate bonds heretofore issued by said railway company.

In the order appointing them, said receivers were authorized in their discretion to pay unpaid ticket, traffic, car mileage, and car per diem balances and accounts for car and equipment repairs incurred by the railway within six months preceding the date of said order, which would be between March 1, 1931, and August 31, 1931. Said order also directed the receivers "to collect all outstanding accounts, things in action, and credits due or to become due owing to the Florida East Coast Railway Company."

At the time said receivers were appointed, there existed between the Florida East Coast Railway Company (hereinafter designated as FEC) and Atlantic Coast Line Railroad Company (hereinafter designated as ACL) mutual interline traffic accounts representing unpaid ticket, traffic, and other similar balances extending back more than six months prior to the appointment of said receivers, payment of which balances is sought by the ACL in intervening petitions now before the court for adjudication.

The interline traffic accounts between FEC and ACL show that as of March 1, 1931, there was due FEC by ACL $26,539.59. On the same date there was due ACL by FEC $20,224.69, thus leaving a net balance in favor of FEC in amount of $6,314.90, as of March 1, 1931, the beginning of the six-month period prior to the appointment of receivers.

During the six-month period from March 1, 1931, to August 31, 1931, there became due FEC by ACL $4,596.44, and to ACL by FEC $22,836.35, thus creating a net balance in the sum of $18,239.91 in favor of ACL on account of transactions occurring during the six-month period.

The various component sums are not in dispute. The controversy arises from the method of computing the ultimate balances so as to determine what portion thereof should be paid in full by the receivers and what portion should be treated as a common claim against FEC.

The receivers contend that the balances prior to and within the six-month period should be computed as follows: Deduct the amount due ACL within the six-month period from the total of the amounts due FEC within the six-month period and the amount due the FEC prior to the six-month period, then deduct the difference found to be due FEC from the amount due ACL prior to the six-month period; leaving a net balance of $11,925.01 due ACL as a nonpreferred claim. By this method the balance due ACL would be computed as follows:

Due to FEC prior to March 1, 1931 $26,539.59
Due to FEC (six-month period).. 4,596.44

| | |
|---|---|
| Total due by ACL to FEC............... | $31,136.03 |
| Due by FEC to ACL (6-month period).. | 22,836.35 |
| Difference due FEC...................... | $ 8,299.68 |
| Due to ACL prior to March 1, 1931..... | 20,224.69 |
| Balance in favor of ACL, nonpreferred | $11,925.01 |

The ACL contends that the balances prior to and within the six-month period should be computed as follows: Deduct the amount due ACL prior to six-month period from amount due FEC prior to six-month period; deduct the amount due FEC within six-month period from the amount due ACL within six-month period; then deduct balance due FEC prior to six-month period from balance due ACL within six-month period, leaving a net balance in amount of $11,925.01 due ACL as a preferred claim. By this method the balance due would be computed as follows:

| | Prior to 6-month period (Non-preferred) | Within 6-month period (Preferred) |
|---|---|---|
| Due to FEC | $26,539.59 | $ 4,596.44 |
| Due to ACL | 20,224.69 | 22,836.35 |
| Due FEC by ACL as of March 1, 1931 | $ 6,314.90 | |
| Net amount due ACL by FEC on acct of transactions occurring during 6-month period | | $18,239.91 |
| Deducting balance due FEC prior to 6-month period | | 6,314.90 |
| Balance due ACL, payable in full | | $11,925.01 |

It will be seen that the ACL computation strikes a balance between the two roads as of March 1, 1931, the beginning of the six-month period, and again strikes an independent balance as of August 31, 1931, at the end of the six-month period when the receivers were appointed, the latter balance, $18,239.91, representing the net amount due ACL by FEC on account of transactions occurring during the six-month period. The first-mentioned balance, $6,314.90, represents the net amount due by ACL to FEC on account of transactions occurring prior to the six-month period. The two computations result in an ultimate balance of $11,925.01, but the difference is that by the FEC method such balance is a common claim against that railway company, while by the ACL method that sum is payable to ACL in full as a preferred claim arising during the six-month period.

The court adopts the method contended for by ACL. It is appropriate that a definite net balance be struck as of March 1, 1931, the beginning of the six-month period, because indebtedness accruing prior thereto is a common claim, while indebtedness accruing subsequent thereto is payable in full as a preferred claim.

On March 1, 1931, ACL owed FEC not $26,539.59, but a simple credit balance of $6,314.90. It is true that on March 1, 1931, the books of ACL showed credits in favor of FEC aggregating $26,539.59. At the same time, however, the books of FEC showed credits in favor of ACL aggregating $20,224.69. Obviously, the actual indebtedness of ACL to FEC on that date was the difference between these two sets of credits, $6,314.90. It is that sum, and not the sum of $26,539.59, that would have been paid by ACL to FEC had accounts between the roads been settled as of that date. During the six-month period prior to the appointment of receivers (March 1, 1931, to August 31, 1931), FEC became indebted to ACL in the aggregate sum of $22,836.35, which, under the court's order of August 31, 1931, should have been paid by the receivers in full, but for the fact that ACL was already indebted to FEC in the above sum of $6,314.90, and during the six-month period became indebted to FEC in the further sum of $4,596.44, which sums, aggregating $10,911.34, the receivers are entitled to deduct in settling accounts up to August 31, 1931, leaving a net balance due ACL of $11,925.01, payable in full under the court's order appointing the receivers.

The method of computation contended for by ACL does. not give its claim any undue or inequitable advantage over the claim of bondholders. Nor does it convert into a preferred claim what would otherwise be a common claim. As of March 1, 1931, ACL had no claim against FEC, preferred or otherwise. The balance was the other way. On that date ACL owed FEC $6,314.90. That being true, it cannot be successfully asserted that ACL is now trying to secure payment in full of a claim arising prior to the six-month period. The present claim of ACL against FEC all arose during the six-month period and should be paid in full in the sum of $22,836.35, but for the above-mentioned deductions. In the ACL computation, the net balance which ACL owed FEC as of March 1, 1931, $6,314.90, is used to reduce by that amount the admittedly preferred claim in favor of ACL arising during the six-month period in amount of $22,836.35, which would otherwise be payable in full, less the sum of $4,596.44 accruing to FEC during the six-month period. Thus FEC collects its claim in full from ACL for the period prior to March 1, 1931, and the amount it actually pays ACL on account of the latter's preferred claim of $22,836.35, due it from FEC over the six-month period, is reduced by the sum of $6,314.90.

The FEC method of computation is at fault in its assumption that on March 1, 1931, ACL actually owed FEC $26,539.59, ignoring the fact that ACL had the then existing right to set off FEC's indebtedness to it, theretofore accrued, in the sum of $20,224.69, leaving an actual indebtedness from ACL to FEC of only $6,314.90. The court's order of August 31, 1931, could not, and was not intended to, defeat that right of set-off. If the receivers immediately upon their appointment had proceeded under the court's order to "collect all outstanding accounts," they could not have collected the full sum of $26,-539.59, but only that amount less what FEC then owed ACL, which on March 1, 1931, was $20,224.90, leaving a net balance owing FEC in amount of $6,314.90 which the receivers could have collected, but no more.

In its computation, FEC first avails itself of the entire sums charged by it against ACL both before and after the six-month period, erroneously treating those sums as indebtedness actually payable to FEC, against which FEC then counterpoises the indebtedness of FEC to ACL arising during the six-month preferential period. It is then for the first time that the sums which FEC owed ACL on March 1, 1931, are taken into account. This the FEC is not entitled to do, because on March 1, 1931, ACL was not indebted to FEC in the sum of $26,539.59, but only in the net sum of $6,314.90. The sum due ACL on March 1, 1931, should have been, but was not, taken into account at the proper chronological point in the computation, to have done which would have reduced the actual indebtedness from ACL to FEC on March 1, 1931, to $6,314.90, not $26,539.59, which was assumed by FEC as a basis for its computation.

While traffic balances accruing within a reasonable period prior to receivership may be ordered paid from gross income before net income subject to pre-existing mortgage liens is considered as having accrued (Miltenberger v. Logansport, etc., R. Co., 106 U. S. 286, 311, 1 S. Ct. 140, 27 L. Ed. 117, 126; Continental Trust Co. v. W. R. Bonsal & Co. (C. C. A.) 72 F.(2d) 975), by the weight of authority there is nothing in the inherent nature of such claims generally which entitles them to preference, in the absence of a showing of diversion of income. Chicago, etc., R. Co. v. U. S. & Mexican Trust Co. (C. C. A.) 225 F. 940, 945; Whelan v. Enterprise Transp. Co. (C. C.) 175 F. 212, 213; Central Trust Co. v. Chicago, etc., R. Co. (D. C.)

232 F. 936, and the many cases cited in 28 USCA § 124, note 245.

But the set off of mutual accounts, one against the other, is not the allowance of a preference. It is an ascertainment of the amount due. "The equity in favor of a lawful set off is superior to any subsequent equity not arising out of a purchase for value without notice." Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 151, 36 L. Ed. 1059.

Decree that receivers pay ACL $11,925.01 in full as a preferred claim.