### HEARFIELD v. BRIDGES et al.

(Circuit Court of Appeals, Ninth Circuit. June 8, 1896.)

No. 263.

1. COMMUNITY PROPERTY—RIGHTS OF HUSBAND—CALIFORNIA STATUTES.

In California a husband has absolute power, during his lifetime, to sell or mortgage the community property; and the interests of all who claim under or through him, or by reason of his death, including the interest of his wife, are bound by a disposition so made by him.

2. MORTGAGES—FORECLOSURE—PARTIES—CALIFORNIA STATUTES.

Under the California statute (Code Civ. Proc. § 1582) providing that "actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts may be maintained by and against executors and administrators, in all cases in which the same might have been maintained by or against their respective testators or intestates," as interpreted by the decisions of the supreme court of the state, establishing a rule of property, an action for the foreclosure of a mortgage may be brought in a court of the state against the administrator of the deceased mortgagor alone, without joining his widow or heirs; and the title derived under a sale in such an action is valid and conclusive, as against such widow and heirs, in a collateral proceeding in a federal court, without regard to the question whether the widow and heirs would be necessary parties to a suit in the federal court for the foreclosure of the mortgage.

Appeal from the Circuit Court of the United States for the Northern District of California.

This was a suit by David Hearfield against Frederick W. Bridges and others to quiet title to certain lands in the city and county of San Francisco, Cal. The circuit court dismissed the bill. 67 Fed. 333. Complainant appealed. Affirmed.

William H. Fifield, for appellant.

Edward R. Taylor, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This was a suit to quiet title to certain lands situated in the city and county of San Francisco, both parties claiming title under one John H. Daley, to whom a quitclaim deed for the property was executed by the city and county of San Francisco on the 5th day of March, 1870; the deed reciting that it was based upon a verified petition presented by Daley to the board of supervisors of that city and county pursuant to the provisions of an order of that municipal body known as "Order No. 866," relating to the settlement of land titles, and was made in accordance with the provisions of the act of congress approved March 8, 1866, entitled "An act to quiet the title to certain lands within the corporate limits of the city of San Francisco" (14 Stat. 4), and of the provisions of an order of the board of supervisors known as "Order No. 800," and of the confirmatory act of the legislature of the state of California of March 27, 1868 (St. Cal. 1867–68, p. 379).

Daley and his wife, Anne Daley, on the 14th of April, 1870, executed to Burr and Dean a trust deed to the premises to secure the repayment of a certain sum of money borrowed by them from the Savings & Loan Society of San Francisco, and on April 11, 1872, the same premises were reconveyed by Burr and Dean to Daley and wife; the deed describing the property as "all the estate and interest derived to us, by or through said deed of trust, in the lots of land, situate in the said city and county of San Francisco, described therein." Thereafter, and on the 1st day of December, 1881, John H. Daley mortgaged the premises to Elizabeth Peltret, as guardian of the person and estate of Elizabeth C. Peltret. June 21, 1882, Elizabeth Peltret married Edward J. Lindforth. May 20, 1884, John H. Daley died intestate in the city and county of San Francisco; and, after due and legal proceedings had in the probate department of the superior court of that city and county, an order was made on June 9, 1884, appointing Philip A. Roach administrator of his estate, to whom letters of administration were on the same day issued. November 11, 1884, Elizabeth Lindforth, née Peltret, brought suit against Roach, as administrator of the estate of Daley, to foreclose the mortgage; at the same time filing in the recorder's office of the city and county notice of the action, in due form, describing the mortgaged property. The defendant to the suit answered, and judgment for the plaintiff followed, under which the property decreed to be sold was sold by the sheriff to A. G. Hawes, who in due time received the sheriff's deed to the premises in controversy, and on October 18, 1887, conveyed the same to the defendant Frederick W. Bridges, who subsequently conveyed portions thereof to his co-defendants. Neither Anne Daley, nor any of the heirs of John H. Daley, were parties to the foreclosure suit; and if they are not concluded by the decree against the administrator of the estate of John H. Daley, and the sale and conveyance made thereunder, the judgment appealed from must be reversed, since the plaintiff has acquired whatever interests, if any, that remained in Mrs. Daley and the other heirs of John H. Daley. If, on the contrary, the sale and conveyance made in pursuance of the decree of foreclosure passed the title to the mortgaged property, the judgment of the court below was right, and must be affirmed.

It is immaterial whether, at the time of the execution of the mortgage by John H. Daley to Elizabeth Peltret as guardian of the person and estate of Elizabeth C. Peltret, the mortgaged premises were the separate property of John H. Daley, or community property of himself and wife; but we shall assume, as most favorable to the appellant, that they constituted community property. Concerning such property, the statute of California, at the time of the making of the mortgage to Elizabeth Peltret, provided, "The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate property." Civ. Code Cal. § 172. By an amendment to that section passed March 31, 1891, a proviso was added in these words: "Provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto." Perhaps he could not have done so without the proviso. However that may be, the proviso is inapplicable to the present case, under its terms, as also because it was enacted long subsequent to the execution of the mortgage in question. As the statute of the state stood prior to the amendment, it is beyond question that the husband had the like absolute power to sell or mortgage the community property as he has to sell or mortgage his separate estate. Landers v. Bolton, 26 Cal. 394, 420; Pixley v. Huggins, 15 Cal. 127; Tustin v. Faught, 23 Cal. 241; Burton v. Lies, 21 Cal. 87; McDonald v. Badger, 23 Cal. 394–399. The obvious effect of this power of disposition in the husband is to bind all of those who claim under or through him, or by reason of his death, where the husband would be bound if he had lived; for, as said by the supreme court of the state in Peck v. Brummagim, 31 Cal. 446:

"The heirs occupy the place of their ancestor, and cannot claim any other or greater right in the property than he could maintain. If the intended gift is found to have been so made as to be legal and valid as to him, it will be equally binding upon the heirs, for they succeeded only to such right or title in the land as he held at the time of his death."

This observation in respect to the heirs is equally applicable to the succession of the wife, whether or not it be true that the wife, under the California statute, acquires her right of absolute property in one-half of the community property upon the death of her husband, by inheritance. It was recently held by the supreme court of California, in Re Burdick's Estate (May 9, 1895) 40 Pac. 35, that the wife did take her interest in the community property by inheritance; but, as the case is still pending on rehearing, the question cannot, of course, be regarded as decided. But whether the wife takes, upon the death of her husband, her interest in the community property as heir of her husband, or not, it necessarily follows, from the absolute power conferred by the statute upon the husband to sell or mortgage the community property, that her one-half of such property, as well as all of the balance of it, is subject to all of the debts contracted by the husband during the life of the community. Mrs. Daley's one-half interest in the community property (treating the property in controversy as such), as well as the interest of their children, was there-

fore subject to the mortgage executed by John H. Daley to Elizabeth Peltret as guardian of the person and estate of Elizabeth C. Peltret. When the debt for the security of which the mortgage was given became due, and remained unpaid, the holder of it became invested with the right to foreclose the mortgage. The state in which the property is situated had provided how it could be acquired; and that to what extent, if at all, it should be regarded as community property, for what obligations such property should be liable, and how it should descend and be succeeded to, were matters of state policy, and for state regulation, are propositions too clear to merit discussion.

At the time of Daley's death the California statute concerning descents and distributions provided that, "when any person having title to any estate not otherwise limited by marriage contract shall die intestate as to such estate, it shall descend and be distributed, subject to the payment of his or her debts," in the manner therein stated (Civ. Code Cal. § 1386); and at the same time, and during all of the times of the occurrences here involved, another provision of the California probate system was as follows:

"Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates." Code Civ. Proc. Cal. § 1582.

Based upon these provisions of the statute, the supreme court of California held in the case of Bayly v. Muehe, 65 Cal. 345, 3 Pac. 467, and 4 Pac. 486, that in an action against an administrator, to foreclose a mortgage, heirs of the deceased mortgagor, in whom, at the time of his death, was the title to the mortgaged property, are not necessary parties; and accordingly, relying upon that decision of the supreme court of the state, and others presently to be noticed, the holder of the mortgage executed by Daley did not make Mrs. Daley, or any of the other heirs of the deceased Daley, parties to the foreclosure suit. In Bayly v. Muehe the facts were, as stated by the court: That one Baker owned a tract of land, which he mortgaged to one Livermore, and then died intestate, leaving surviving him certain heirs at law. An administratrix of his estate was appointed, to whom the mortgage claim was presented, and the same was duly approved and allowed. Livermore then commenced suit against the administratrix to foreclose the mortgage. To that suit none of the heirs of the mortgagor were made parties. The proceedings in the action were regularly had and taken, and resulted in the entry of a decree of foreclosure in the usual form, the issuance of an order of sale, the sale of the mortgaged premises pursuant to its direction, and the execution of the sheriff's deed in due course of time. The court said:

"If Baker had lived, there can be no doubt that the action for the foreclosure of the mortgage could have been maintained against him, and that a judicial sale and conveyance (the proceedings being regular) would have passed the title of the property to the purchaser. If, then, an action for the foreclosure of a mortgage is founded upon contract, the same result must follow, under our statute, when the action is brought against the executor

or administrator of the testator or intestate; for it would not do to say that the statute authorizes the maintenance of such an action against the executor or administrator to the same extent as it might have been maintained against the testator or intestate, and yet to hold that a sale and conveyance made in pursuance of a decree duly rendered in such an action passed no title. The very purpose of a foreclosure suit, under our system, is to procure a legal determination of the existence of the lien, the ascertainment of its extent, and the subjection to sale of the property pledged for its payment. That such a lien arises out of contract is plain. The mortgage itself is a contract pledging the property embraced in it for the payment of the debt it is given to secure. The action of foreclosure is founded on this, as well as the principal contract for the payment of the money; and the statute declaring that 'all actions founded upon contracts may be maintained by and against executors and administrators, in all cases in which the same might have been maintained by or against their respective testators or intestates,' we must hold that the executors or administrators, as the case may be, represent the title of their respective testators or intestates in such foreclosure suits, and that the statute has so far changed the common-law [equity] rule as to render it unnecessary to make the heirs parties. It has even been held in this state that a judgment in ejectment against the administrator concludes the heirs, although not parties to the action. Cunningham v. Ashley, 45 Cal. 485; De Halpin v. Oxarart, 58 Cal. 101."

It is conceded on the part of the appellants that the case last cited (Bayly v. Muche) is on all fours with the foreclosure suit brought by the holder of the mortgage executed by John H. Daley against the administrator of his estate. That suit (having been brought in a court of the state of California, and the highest court of the state having held that, under and by reason of the California statute, a judicial sale and conveyance—the proceedings being regular—made under a decree rendered in a suit in which only the administrator of the estate of the mortgagor is a party passes the title to the mortgaged property) is conclusive against the surviving wife and heirs, and all persons claiming under them, in a collateral attack, such as is the present suit to quiet title. The question here is not whether, in a suit brought in a federal court to foreclose a mortgage, where the mortgagor is deceased, his surviving wife and heirs are necessary parties, but whether, where a sale and conveyance made under and by virtue of a decree rendered in such a suit in a court of this state, where the property is situated, is valid and conclusive against the surviving wife and heirs under the state law, they can be ignored and invalidated by a federal court in a suit brought by them, or their successors in interest therein, to quiet title. According to the law as declared by the supreme court of this state, where the property in controversy is situated, the state court entering the decree of foreclosure had jurisdiction of the subject-matter, and of all necessary parties. That construction of the state statute by its highest court, and the rule of property thus established, are binding and conclusive on the federal courts. Polk v. Wendall, 9 Cranch, 97; Hampton v. McConnell, 3 Wheat. 234; Burgess v. Seligman, 107 U. S. 33, 2 Sup. Ct. 10; Town of South Ottawa v. Perkins, 94 U. S. 260; Fairfield v. Gallatin Co., 100 U. S. 47; Post v. Supervisors, 105 U. S. 667. The case of Bayly v. Muehe has been expressly affirmed in two subsequent cases in the same court, namely, Monterey Co. v. Cushing, 83 Cal. 508, 23 Pac. 700, and Collins v. Scott, 100 Cal. 452, 34 Pac. 1085. In Monterey Co. v. Cushing the court held (affirming in terms, the case of Bayly v.

Muehe) that in a proceeding to condemn land for a public road the executrix was the only necessary party defendant; the court there, as in the Bayly Case, placing its decision on the provisions of section 1582 of the Code of Civil Procedure of California. The decision in the case of Monterey Co. v. Cushing was, as said in the opinion of the court below in the present case—

"A more extreme application of the statute than the foreclosure of a mortgage against an estate. A mortgage is an obligation of the deceased, and in fact, as well as in potentiality of law, could have been maintained against him. Condemnation proceedings against an executrix have no connection with the testator whatever. They are instituted subsequent to his death, and against property which, according to counsel, had become vested, by operation of law, in heirs."

In Collins v. Scott, 100 Cal. 452, 34 Pac. 1085, the supreme court of California again expressly affirmed the decision in Bayly v. Muehe. That action was brought to vacate a judgment of foreclosure, and all proceedings thereunder, including the sale and conveyance. One of the points made was that the plaintiffs, who were heirs of Lemuel P. Collins, were not made parties to the suit which was brought against his administrator. The court said:

"As heirs at law of the mortgagor, Lemuel P. Collins, these plaintiffs were not necessary parties to the action to foreclose. Bayly v. Muehe, 65 Cal. 345, 3 Pac. 467, and 4 Pac. 486; Monterey Co. v. Cushing, 83 Cal. 507, 23 Pac. 700. And whether or not they were made parties defendant in that action is of no moment."

The decision in Bayly v. Muehe was also in exact accord with the preceding case in the same court entitled Cunningham v. Ashley, 45 Cal. 485, which latter case was cited by the court in its opinion in Bayly v. Muehe. In Cunningham v. Ashley, as in Bayly v. Muehe, heirs were claiming under the title which had been adjudicated against the administrator of the estate of the ancestor. They insisted that they were not concluded by a judgment against the administrator of their ancestor's estate, rendered in an action of ejectment, for the reason that the administrator did not have the legal title. The court, after citing the section of the act to regulate the settlement of estates of deceased persons, which provided that an administrator may maintain an action "for the recovery of any property, real or personal," said:

"In view of this provision of the statute, it becomes unnecessary to inquire into what is the nature of the title of an administrator, either as to the lands or goods of his intestate, or whether he can be properly said to have in himself any title whatever to either. The principle of law upon which the estoppel rests has reference to the fact that in the former action the hostile titles were directly opposed before the court rendering the former judgment, and that the superiority of the one over the other was ascertained and fixed by that judgment. That an administrator appearing in an action involving the interests of the estate represents as well the heirs as the creditors of the deceased is well settled. But he represents, not only the interests of heirs and creditors, but also the title which the deceased had at the time of his death. When, therefore, in an action of ejectment, an administrator, seeking to recover the real estate of his intestate, alleges upon the record the seisin of that intestate, he thereby tenders an issue directly upon the title of the premises. If issue be joined by the defendant upon this point, and judgment be rendered, it is necessarily an adjudication that the title of the intestate was or was not superior to the title set up, or which might have been set up,

by the defendant in the action. Title is the means by which the right to possess property is made to appear. The authority conferred and the duty expressly imposed by statute upon the administrator, to institute actions to recover real property belonging to the estate which he administers, necessarily import that he is to make such averments in pleading, and support them, if he can, with such proof, as would entitle him in point of law, to recover the possession of the premises by the judgment of the court. The title upon which he is to recover is not his own title, nor that of the heirs or the creditors he represents, but the title of the intestate. The seisin upon which he must rely is the seisin which the deceased had at the time of his death. It is that title and that seisin which is put in issue, and the sufficiency of which is determined, by the judgment rendered in the action. If the judgment be in favor of the administrator, it amounts to an adjudication that the title of the deceased, represented by the administrator, is superior to that upon which the defendant relies; and such a judgment would, upon that point, estop the defendant, or his privies, in a subsequent action brought for the recovery of the same premises in favor of the administrator, or the heirs, after distribution made, or in favor of any person who had subsequently succeeded to that title, or to the right to assert it in court. All these consequences flow from the statutory right of the administrator to sue for the recovery of the estate of the deceased; otherwise there is the anomaly of an action brought, and a judgment rendered upon the issue joined, by which judgment, however, nothing is, in effect, determined, and no one concluded. So, if,—as in the action of the Administrator of Kittleman v. Cunningham [29 Cal. 492],—upon an action brought by the administrator against a defendant in possession of real property, upon the allegation of seisin in the deceased at the time of his death, it be adjudged that the intestate was not seised, or that the defendant had the better title, the legal consequence follows that the administrator, the heirs, and creditors, and all persons subsequently asserting that title, as having vested in themselves by reason of the death of the intestate, are alike estopped to deny the superiority of the title of the defendant adjudicated in the former action."

The California cases already cited, and the California statute upon which they are based, proceed upon the theory that the administrator represents, in respect to all of the property of which the deceased died seised, all of those who succeed to its title by reason of his death. In a very recent case—Robertson v. Burrell (Jan. 23, 1896) 42 Pac. 1086—the supreme court of California held that the administrator—

"Is a trustee with well-defined duties, among the first of which is that of collecting the assets of the estate, and paying its just debts, after due notice to creditors. The heirs' title is subject to performance by the administrator of all his trusts, and they finally come into the possession and enjoyment of only such portion of the estate as may remain after the execution of them by the administrator."

As has been shown, under the statute of California, John H. Daley had the absolute power of disposition of the property here in controversy, and, in the exercise of that power, executed a mortgage upon it, and then died intestate, without having conveyed away the title. The interest in that property, to which the wife and all other heirs succeeded upon his death, was subject to that mortgage. The state statute provided for the appointment of an administrator of his estate, upon whom the trust was cast of collecting and taking possession of all of the property of the deceased, with which, among other things, to pay his debts; and the decisions of the supreme court of the state are to the effect that, in respect to property of which the deceased died seised, the administrator

represents the title, and all those who succeeded to it by reason of his death, and that a judgment against the administrator in his representative capacity binds all for whom he stands as trustee. The law, as thus declared by the highest court of the state, in respect to a rule of property within the state, is, as has been shown, binding on this court. Judgment affirmed.