## WILLIAMS v. CLINTON et al.
### No. 1333.

Circuit Court of Appeals, Tenth Circuit.
April 7, 1936.

competent Osage allottees upon such courts. Clinton gave a guardian's bond with the Fidelity & Casualty Company as surety. Mashunkashey died June 10, 1934, and appellant is his administratrix. The Secretary of the Interior paid to the guardian more than $35,000 during his guardianship. The expenditures of the guardian have, it appears from unchallenged documents filed in this court in support of a motion to dismiss the appeal, been approved by the court of his appointment after hearings at which appellant was represented, and appellant has appealed to the Supreme Court of Oklahoma. It similarly appears that all expenditures made by Clinton were made upon the joint approval in writing of the court of his appointment and the Superintendent of the Osage Agency.

This is an original action to require Clinton and his surety to account to the federal court for the funds received by him as such guardian. Appellant applied to the court of her appointment for permission to prosecute this action and this appeal and to employ counsel for that purpose, which application was denied; appellant appealed to the district court which reversed the county court; appeal was then taken to the Supreme Court and the district court order was superseded. It is at least doubtful whether, in this state of the record, appellant can be heard at all. We pass the point because it seems clear that her case is without merit. The motion to dismiss the appeal is therefore denied.

Harry Seaton and Henry R. Duncan, both of Tulsa, Okl., for appellant.

Phil W. Davis, Jr., of Tulsa, Okl. (W. I. Williams and W. E. Green, both of Tulsa, Okl., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

## McDERMOTT, Circuit Judge.

Charles Mashunkashey was a full-blood Osage allottee, incompetent in both law and fact. His residence was in Tulsa County, Oklahoma, and on August 3, 1931, the county court of that county appointed Clinton his guardian. Section 3 of the Act of April 18, 1912, 37 Stat. 86, confers jurisdiction over the property of in- The second amended bill alleges that the Secretary of the Interior erroneously paid to the guardian "restricted funds and property which were under the control and supervision of the Secretary of the Interior" in excess of $4,000 per year; that the county court acquired no jurisdiction over such sums so erroneously paid; that such sums should be repaid to the Secretary; that the county court of Osage County, Oklahoma, has not authorized the county court of Tulsa County to receive or disburse any of such restricted funds; that the Secretary of the Interior refused to bring this suit when requested, and therefore the administratrix may. Barnett v. Equitable Trust Co. (C.C.A.2) 34 F.(2d) 916, affirmed United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379. The prayer of the bill is that the guardian account to this court

for all funds received by him in excess of $4,000 per year. The bill was dismissed upon motion. This appeal follows.

Increased production of oil and gas in the Osage Nation so swelled the quarterly payments to allottees that gross extravagance and waste resulted. On March 3, 1921, Congress passed an act, 41 Stat. 1249, limiting the payments to allottees without certificates of competency to $1,000 a quarter, except where such allottees had legal guardians, in which event the payments were to be made to the guardians. Confusion arose over the power of the Secretary to supervise investments of guardians; and as to whether the $1,000 limit applied to guardians. This confusion was cleared up in Work v. United States ex rel. Lynn, 266 U.S. 161, 45 S.Ct. 39, 69 L.Ed. 223, the court holding that the limit applied to guardians; that the Secretary had the power to regulate the investment of any excess, but no power to direct or control the county courts which exercised the jurisdiction conferred by the Act of April 18, 1912.

The Act of February 27, 1925, 43 Stat. 1008 (25 U.S.C.A. § 331 note), now drawn into question, was passed three months after the decision of Work v. United States ex rel. Lynn. In line with that decision, it enacts that not more than $1,000 a quarter shall be paid to an incompetent adult or his guardian, the Secretary to decide to whom the payment shall be made, but that the total of such payments "shall not exceed $1,000 quarterly except as hereinafter provided." Section 1 (25 U.S.C.A. § 331 note). Provision is then made for payments on account of minor children; then follow these provisions:

"Rentals due such adult members from their lands and their minor children's lands and all income from such adults' investments shall be paid to them in addition to the allowance above provided. All payments to legal guardians of Osage Indians shall be expended subject to the joint approval in writing of the court and the superintendent of the Osage Agency. All payments to adults not having certificates of competency, including amounts paid for each minor, shall, in case the Secretary of the Interior finds that such adults are wasting or squandering said income, be subject to the supervision of the superintendent of the Osage Agency: Provided, That if an adult member, not having a certificate of competency, so desires, his entire income accumulating in the future from the sources herein specified may be paid to him without supervision, unless the Secretary of the Interior shall find, after notice and hearing, that such member is wasting or squandering his income, in which event the Secretary of the Interior shall pay to such member only the amounts hereinbefore specified to be paid to adult members not having certificates of competency." Section 1.

This statute was amended by section 3 of the Act of March 2, 1929, 45 Stat. 1478, by adding thereto the following:

"The Secretary of the Interior be, and is hereby, authorized, in his discretion, under such rules and regulations as he may prescribe, upon application of any member of the Osage Tribe of Indians not having a certificate of competency, to pay all or any part of the funds held in trust for such Indian."

■ There can be no doubt since Work v. United States ex rel. Lynn that the guardian of an incompetent Osage may receive the payments to which his ward would be entitled except for the guardianship. The Secretary is therefore authorized to pay the additional sums contemplated by the 1925 and 1929 acts to an incompetent Indian personally or to his guardian if he has one. There would be no reason for denying the Secretary a right to pay to a guardian such funds as he is authorized to pay to an incompetent Indian. That such has been the administrative interpretation of these acts is indicated by the payments made in this case by the Secretary to the guardian.

■ The amended bill does not therefore disclose that payments were erroneously made by the Secretary. For aught alleged in the bill, the excess payments may have come from land rentals or investments. If not, then the Secretary was authorized in his discretion, by both the 1925 and 1929 acts, to pay the entire income to the incompetent Indian or his guardian. It is to be presumed he did his duty, and neither the guardian nor the county court had any right to question the decision of the Secretary; when the Secretary transmitted these funds to the guardian it was the guardian's duty to receive and properly administer them. No question of abuse of discretion by the Secretary is or can be raised in this action. Appellant in the brief virtually concedes this,

for it is stated therein that "A guardian appointed by a County Court of another county may have the right of naked possession."

It is next contended that even if the funds were rightfully in the possession of the guardian, he had no authority to expend them without the approval of the county court of Osage County. In that part of the 1925 act dealing with the payments to guardians, the section provides that "All payments to legal guardians of Osage Indians shall be expended subject to the joint approval in writing of the court and the superintendent of the Osage Agency." Section 1. It is not alleged that such approval was lacking. The section then deals with the investment by the Secretary of any excess; for the return to the Secretary of payments theretofore made of such excess; that investments made by guardians shall not be sold without the approval of the Secretary; for the payment of certain indebtedness of Indians, and then the clause now relied upon:

"All funds other than as above mentioned, and other property heretofore or hereafter received by a guardian of a member of the Osage Tribe of Indians, which was theretofore under the supervision and control of the Secretary of the Interior or the title to which was held in trust for such Indian by the United States, shall not thereby become divested of the supervision and control of the Secretary of the Interior or the United States be relieved of its trust; and such guardian shall not sell, dispose of or otherwise encumber such fund or property without the approval of the Secretary of the Interior, and in accordance with orders of the county court of Osage County, Oklahoma." Section 1.[1]

■ It cannot be seriously contended that this clause repealed the 1912 statute conferring jurisdiction upon the several county courts of Oklahoma. The Supreme Court of Oklahoma has held, and we think properly, that a proviso in section 7 of the 1912 act (37 Stat. 88) permitting payment of expenses of the last sickness from inherited moneys upon order of the Osage County court, did not confer exclusive jurisdiction upon that court over all Osages, nor impair the jurisdiction of county courts

of residence which were administering the estate. In Work v. United States ex rel. Lynn, supra, the 1912 act was construed as conferring jurisdiction upon "local county courts" and certainly Congress by this disconnected reference to the Osage court did not intend that the administration of the estates of deceased or incompetent Indians must be had in a court far removed from the county of his residence or where his property was located. Nor is it lightly to be imputed that Congress intended that a county court with jurisdiction may only act with the permission of another court without jurisdiction.

■ Furthermore, the clause in question is limited to "all funds other than as above mentioned"; payments to guardians are "above mentioned" and covered by the requirement that expenditure thereof shall be made with the joint approval of "the court and the superintendent of the Osage Agency." Here the court referred to is undoubtedly the court of administration. The clause thus by its own terms excludes the funds here involved. Under appellant's construction every payment made by a guardian (and many of the payments here were of $10 or less) must have the approval of four officers, to wit, (1) the court of administration, (2) the superintendent of the Osage Agency, (3) the Osage county court, and (4) the Secretary of the Interior. Such construction would bog down the administration of these estates and fritter them away in procedural expenses, to say nothing of laying a tremendous mass of detail upon a cabinet officer.

The amended bill states no cause of action against the surety defendant for the further reason set out in Globe Indemnity Co. v. Bruce (C.C.A.10) 81 F.(2d) 143, certiorari denied 56 S.Ct. 591, 80 L.Ed. ——.

■ The amended bill was rightly dismissed for two reasons: (1) Since the county court has jurisdiction over the funds in question, the accounting must be made to that court and not to a federal court. Doran v. Kennedy, 237 U.S. 362, 35 S.Ct. 615, 59 L.Ed. 996; Globe Indemnity Co. v. Bruce, supra; Folk v. Monsell (C.C. A.10) 71 F.(2d) 816. (2) The clause in the Act of February 27, 1925, referring to the approval of the Osage county court

---

[1] In Hickey v. United States, 64 F.(2d) 628, this court held this clause reimposed restrictions on funds in the hands of guardians.

has no reference to funds theretofore mentioned in the section, and the funds here in question were theretofore mentioned and their expenditure authorized upon the approval of the Osage Agency and the court of administration.

Affirmed.