## UNITED STATES v. SANDS et al.
### No. 1575.

Circuit Court of Appeals, Tenth Circuit.
Jan. 7, 1938.

Joe W. Howard, Asst. U. S. Atty., of Tulsa, Okl. (C. E. Bailey, former U. S. Atty., and Whit Y. Mauzy, U. S. Atty., both of Tulsa, Okl., on the brief), for the United States.

R. L. Davidson, of Tulsa, Okl. (A. B. Campbell, of Pawhuska, Okl., on the brief), for appellees.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

Raymond Red Corn was enrolled as allottee No. 484. On April 2, 1910, the Secretary of the Interior, under provisions of paragraph 7 of section 2 of Act of Congress, approved June 28, 1906, 34 Stat. 539, 540, issued to him a certificate of competency.

On June 16, 1923, the said Red Corn entered into a verbal contract with the appellee, A. S. Sands, an attorney at law, practicing his profession at Pawhuska, Okl., where the said Red Corn then resided. On March 28, 1924, the said contract was reduced to writing. Within one year after its execution it was orally modified at the instance of the said Red Corn and with the consent of the said Sands, which was executed, to the effect that the said Sands would not look after, or transact any business for the said Red Corn, or act as his agent; the said Sands being thereafter restricted to checking and adjusting the accounts of the said Raymond Red Corn, making advances to him personally, and paying his bills, for which services the said Sands was to receive $100 per quarter, and interest on the advances so made at the rate of 10 per cent. per annum.

The oral modification of said contract was fully carried out by both the said Sands and the said Red Corn. Sands kept a book account of the advancements and expenditures made by him under the contract with the said Red Corn and the credits received by him for the said Red Corn's account, which covered a period from June 16, 1923, until July 13, 1929. This account was examined and checked by government agents three times and found to be accurate and correct; first in December, 1928, by Mr. Trowbridge, an inspector for the Interior Department, who required Sands to turn over to the said Raymond Red Corn as his property, all of the receipted bills, paid notes and vouchers then in possession of Sands; the second time—three or four years later—by Mr. Debolt, a representative of the Treasury Department; and the third time—about a year and a half before the case was tried—by Mr. Jenkins of the Department of Justice.

On May 3, 1924, one Red Corn, whose Indian name was Wy-E-Gla-In-Kah, restricted Osage allottee No. 481, the father of the said Raymond Red Corn, Osage allottee No. 484, executed and published his last will and testament which was prepared at the Osage Agency, witnessed among others by the Chief Clerk at the Agency, and approved by the Secretary of the Interior. The said A. S. Sands was designated therein as executor, he having had nothing to do with the preparation of the will, and not

knowing that he had been designated as executor thereunder until after Wy-E-Gla-In-Kah's death, who died on January 9, 1927, leaving an estate of about $187,000, one-half of which was devised to his son, Raymond Red Corn, Osage allottee No: 484, and one-half to his son, Wakon Iron, subject to certain small bequests.

The said A. S. Sands was thereupon appointed executor under the said will by the county court of Osage county, Okl., and qualified as such.

Sands kept a separate account as executor of the estate of Wy-E-Gla-In-Kah, which was approved by the county court of Osage county, Okl. After Sands' qualification as executor, the Department of the Interior released and paid over to him as such executor, all of the funds and securities belonging to the said estate for administration and distribution through the county court of Osage county, Okl., under the terms of, and in accordance with; the will of Wy-E-Gla-In-Kah.

On January 28, 1928, Sands, as executor, made a partial distribution of the estate of Wy-E-Gla-In-Kah, distributing to Raymond Red Corn and to Wakon Iron cash and securities amounting to $88,000 each. Raymond Red Corn received:

| | |
|---|---|
| In cash | $54,500.00 |
| Hall Note and Mortgage | 18,000.00 |
| Old Agency Bldg. Bonds | 11,000.00 |
| B. & L. Stock | 3,000.00 |
| House at Camp | 1,200.00 |
| Used Automobile | 300.00 |
| Total | $88,000.00 |

On January 30, 1928, Sands sold and conveyed to the said Raymond Red Corn, on the latter's solicitation, a farm of 765.2 acres adjacent to the city of Pawhuska, Okl., for the agreed consideration of $47,000, the purchase price of the farm being paid by Raymond Red Corn turning over to Sands the Hall note and mortgage for $18,000, the Old Agency Building Bonds for $11,000, the Building & Loan Stock for $3,000, and executing and delivering three $5,000 notes to Sands, secured by mortgage on the said 765.2-acre tract of land. In the book account the said Raymond Red Corn was charged with the purchase price of the farm and credited with the cash and securities turned over to the said Sands by the said Red Corn, and the mortgage in the sum of $15,000.

A. E. Alred, who had lived upon said 765.2 acres before Sands sold it to Red Corn, from the date of its sale paid rent directly to Raymond Red Corn under lease made by said Raymond Red Corn without departmental supervision or control.

On September 26, 1928, Sands made final settlement of his account as executor of the estate of Wy-E-Gla-In-Kah, and distributed to Raymond Red Corn and Wakon Iron the sum of $5,713.88 each in cash, being finally discharged as such executor by the county court of Osage county, Okl. On October 24, 1928, the said Raymond Red Corn and his wife sold and conveyed to Robert Stuart 80 acres of this land (765.2 acres) for an airport site.

On December 27, 1928, Raymond Red Corn and his wife reconveyed to Sands 40 acres of the said 765.2 acres, receiving therefor credit on his account in the sum of $5,000. On December 27, 1928, Raymond Red Corn's account, after being credited with said sum, showed Raymond Red Corn owed Sands $18,710.88, including the $15,000 evidenced by the said three notes of date January 30, 1928. On the same date, Raymond Red Corn and his wife executed and delivered to Sands four notes, one for $5,000 due one year after date, one for $5,000 due two years after date, one for $5,000 due three years after date, and one for $3,710.88 due four years after date, each bearing interest from date at the rate of 7 per cent. per annum, and also executed and delivered to Sands a mortgage on the 645.2 acres of land remaining out of the 765.2 acres, after the conveyance to Stuart of the 80 acres and to Sands of the 40 acres. At the same time Sands surrendered to the said Red Corn the three $5,000 notes under date of January 30, 1928, and released of record the mortgage securing same.

On February 13, 1928, the said Red Corn and Sands each signed a statement showing the status of the account then between them on that date, on which the purchase price of the farm of $47,000 was entered in two items at the request of said Raymond Red Corn for taxation purposes, $20,000 of the purchase price being included in this statement in the item of $37,650.04, and the $27,000 item as purchase price of the farm.

On January 31, 1929, Sands pledged said four notes aggregating $18,710.88 to the Citizens National Bank of Pawhuska, Okl.,

to secure certain indebtedness which he owed said bank, transferring and assigning to said bank the mortgage lien securing the payment of said notes.

On February 9, 1929, the Secretary of the Interior acting under the authority of section 4 of the Act of Congress of February 27, 1925, 43 Stat. 1008, 25 U.S.C.A. § 331, revoked as of that date the certificate of competency, which had been issued to the said Raymond Red Corn under date of April 2, 1910.

Thereafter, on May 14, 1929, the Superintendent of the Osage Indian Agency, requested Sands by letter to submit for transmission to Washington the claim which he understood Sands held against said Raymond Red Corn in the form of a mortgage, and on the 31st day of May, 1929, Sands in response to said letter, submitted to said Superintendent, true and correct copies of the said four notes, with a statement that no part of the money evidenced by said notes had been paid, and that the full amount thereof with accrued and accruing interest would become due at the time of their maturity. This claim was disapproved by the Secretary of the Interior on June 11, 1934.

On April 30, 1931, the said Raymond Red Corn died intestate, leaving his widow, Bernice Red Corn, a white woman, and his three sons, Raymond Red Corn, Jr., Harold Red Corn, and Douglas Red Corn, as his sole and only heirs at law. The three sons are unallotted Osage Indians of one-half Indian blood without certificates of competency. The said Raymond Red Corn, Jr., was born August 22, 1911, Harold Red Corn on November 27, 1913, and Douglas Red Corn on February 5, 1918. The widow inherited one-third interest, and each of· the sons two-ninths interest in the land involved herein. The said decedent, Raymond Red Corn, and Bernice Red Corn were married on July 13, 1923, and remained husband and wife until his death. Bernice Red Corn was appointed administratrix of the estate of the said intestate Raymond Red Corn.

On August 21, 1931, the Citizens National Bank of Pawhuska, Okl., within the time required by law, presented to Bernice Red Corn as such administratrix, a claim for $15,000 and accrued interest, based on said three $5,000 notes, and the American National Bank of Pawhuska, Okl., a claim for $3,710.88 and accrued interest based on said $3,710.88 note, and said claims so presented were allowed by said administratrix on August 21, 1931, and such allowance was thereafter approved by the county court of Osage county, Okl., on September 2, 1931.

On August 3, 1932, the said Citizens National Bank, having released to Sands the $3,710.88 note which he had pledged to the American National Bank as collateral security, assigned its claim for $15,000 and accrued interest back to Sands.

On April 15, 1933, the Osage county court on application of said administratrix, and after notice to the Superintendent of the Osage Indian Agency, entered an order finding that said claims had been presented to, and allowed by, said administratrix and allowed and approved by the county court, and that said claims should be paid, and ordering and authorizing the said administratrix to apply to, and receive from, the Osage Indian Agency sufficient funds belonging to the estate to pay said claims.

On March 22, 1933, pursuant to petition for that purpose, the county court of Osage county determined the heirship of said Raymond Red Corn's estate, and fixed the interest of the respective heirs in the estate.

On April 7, 1934, Sands brought suit in the district court of Osage county, Okl., against Henry Hudson, the then administrator of the estate of Raymond Red Corn, deceased, Bernice Red Corn, the surviving widow, and Raymond Red Corn, Jr., Harold Red Corn, and Douglas Red Corn, sons of the intestate, Raymond Red Corn, and the American National Bank of Pawhuska, as assignee of the fourth Red Corn note of $3,710.88, to foreclose the mortgage of December 27, 1928, making ·the usual allegations in a mortgage foreclosure action, asking for judgment based upon the three $5,000 Raymond Red Corn notes, and for foreclosure of said mortgage.

On May 10, 1934, the American National Bank filed its answer and cross-petition in said action, seeking judgment on the note of $3,710.88 and foreclosure of its lien.

On May 12, 1934, after obtaining personal service upon all of the defendants, Bernice Red Corn being in default, Sands dismissed said action as to the said Raymond Red Corn, Jr., Harold Red Corn, and Douglas Red Corn, and proceeded to trial of said action, and Sands obtained judgment on the three $5,000 notes, together with interest and attorney's fees, and the American National Bank obtained judg-

ment on the $3,710.88 note, together with interest and attorney's fees, the two judgments aggregating more than $27,000, and the court foreclosed said mortgage, ordering the sale of said land to satisfy said judgments.

In June, 1934, the Osage Tribal Attorney filed a motion in said cause for and on behalf of Raymond Red Corn, Jr., Harold Red Corn, and Douglas Red Corn, asking that they be reinstated as defendants in said action, and that the Tribal Attorney be appointed as guardian ad litem for Harold Red Corn and Douglas Red Corn, and that said three defendants be given appropriate time in which to plead or answer, and on June 15, 1934, the Superintendent of the Osage Indian Agency filed in said cause a petition to vacate the foreclosure judgment on the same grounds the government here is seeking to avoid the effect of said foreclosure judgment in this action. On July 14, 1934, Sands filed a motion to dismiss the petition of the Superintendent, and also a motion to dismiss the application of the Tribal Attorney on the grounds that: First, that Raymond Red Corn, Jr., Harold Red Corn, and Douglas Red Corn, were not necessary or proper parties to said action, having no right or authority to appear in the cause at that time, to move for vacation of said judgment, and not proper persons to be made parties therein, after judgment had been rendered; second, that neither the Superintendent nor the Tribal Attorney had any right or authority to file said pleadings in behalf of Raymond Red Corn, Jr., Harold Red Corn, or Douglas Red Corn, or ask the relief prayed for; and third, that the Superintendent and the Osage Tribal Attorney filed said pleadings without authority from said heirs, and over their protest, and have no right or authority to represent said heirs or plead for them or in their behalf, or ask for the relief sought.

On November 30, 1933, after the matter had been heard, briefed, and taken under advisement, the district court sustained the motions to dismiss and denied the motion of the Osage Tribal Attorney and the petition of the Superintendent of the Osage Indian Agency, to which ruling exception was taken. No appeal having been taken or prosecuted from this order, on December 13, 1935, an order of sale was issued pursuant to said foreclosure judgment, in the said district court, and on January 13, 1936, the sheriff sold said land, after due advertisement, to the said Sands for the sum of $25,000, he being the highest bidder therefor, and at the same time on January 13, 1936, the American National Bank of Pawhuska, Okl., then the First National Bank in Pawhuska, by redesignation, assigned to Sands its interest in said foreclosure judgment. The bid of Sands was applied and credited upon the judgment in said case.

On January 28, 1936, the district court approved and confirmed said sale and directed the sheriff to make and execute to the purchaser a good and sufficient deed, and on that day, the sheriff executed and delivered to Sands a deed conveying said land to him.

On February 1, 1936, the First National Bank in Pawhuska, Okl., loaned Sands the principal sum of $10,000, and Sands executed to said bank a mortgage covering said land to secure payment thereof.

On May 12, 1936, the United States in its own behalf and that of the heirs of said Raymond Red Corn, Osage allottee No. 484, and under direction of the Attorney General of the United States, who acted at the request of the Secretary of the Interior, filed its bill of complaint in the United States District Court for the Northern District of Oklahoma against the said A. S. Sands and the First National Bank in Pawhuska, Okl.

In said bill, the United States seeks on the ground of fraud to set aside the sale of said land made under authority of the foreclosure decree of May 12, 1934, in the district court of Osage county, Okl., and the mortgage of February 1, 1936, made by Sands to the First National Bank in Pawhuska, Okl., to secure the loan of $10,000, and further to quiet title to said land in Raymond Red Corn, Jr., Harold Red Corn, and Douglas Red Corn, and the estate of Raymond Red Corn, deceased, and to enjoin the said Sands and the said bank from enforcing or taking any benefits from the action of the administratrix of the estate of Raymond Red Corn, deceased, in allowing, or the order of the Osage county court approving and allowing, the claims represented by the four Red Corn notes of December 27, 1928, and to enjoin the said defendants from enforcing or taking any benefit, profit, or advantage from the foreclosure judgment of the district court of Osage county, Okl., and to enjoin the defendants from interfering with the complainant in protecting and acting for and on behalf of Raymond Red Corn, Jr.,

Harold Red Corn, and Douglas Red Corn in connection with the said land.

On April 13, 1936, the defendants filed their answer, asserting that the bill of complaint was insufficient on its face to constitute a valid cause of action in equity against the defendants, making specific admission of certain allegations in the bill and specific denials of certain other allegations therein, especially denying any fraud or overreaching on the part of Sands in his dealings with the said Red Corn, and setting out in detail all of the facts involved in the transactions between Sands and Raymond Red Corn, and, in addition thereto, pleading the presentation to and approval by the administratrix and the county court of Osage county, Okl., of the claims based on the four Red Corn notes of December 27, 1928, and the order of the probate court directing their payment, and also pleading the judgment roll in the foreclosure action and the sheriff's deed conveying said lands to the defendant Sands, and the execution and delivery of the mortgage for $10,000 to the First National Bank in Pawhuska, Okl., and also setting up the appearance and the proceedings of the Superintendent of the Osage Indian Agency, and the Osage Tribal Attorney in the foreclosure action whereby they sought to set aside and vacate the foreclosure decree upon the same identical grounds on which the United States is seeking in this action to avoid the force and effect of the foreclosure decree, and the sale of said lands thereunder, these matters all being pleaded as res judicata of the issues involved in this case and as an estoppel against the United States to maintain this action.

The court below found that there was no fraud, undue influence, or overreaching on the part of Sands in making the sale of the 765.2 acres of land or in taking and receiving the four notes aggregating $18,710.88 and the mortgage securing them; that there was an adequate and valuable consideration for the execution and delivery of said notes and mortgage; and that the indebtedness evidenced by said notes was just and valid. The court then concluded as matters of law that the mortgage securing the four notes aggregating $18,710.88 created a valid lien; that the approval of the claims by the administratrix and their allowance by the county court established such claims as a just and valid indebtedness against the estate of said Red Corn, deceased; that such land is free of all governmental restrictions and limitations and that the filing of the motion in the district court of Osage county, by the Superintendent of the Osage Agency to vacate the decree on substantially the same grounds as are pleaded in the bill in this action with failure to appeal from the denial of such motion, estops the government to maintain this action. A decree was entered dismissing the bill and denying any relief. The government appealed.

The first contention advanced is that by reason of the fiduciary relation existing between the parties, Sands overreached, unduly influenced, and defrauded Red Corn in the sale of the land and the procurement of the notes and mortgage, and for such reason there was no valid and legal contractual obligation on the part of Red Corn. A fiduciary relation did exist between the parties that required Sands to act with the utmost good faith, openness, and fairness; but the law did not forbid the parties to engage in the transaction. Moreover, in view of the relationship, the transaction was prima facie voidable and the burden was on Sands to show the absence of undue influence or fraud. The court heard the evidence and expressly found that there was no fraud, undue influence, or overreaching. That finding is adequately supported by evidence. Findings of fact made in an equity case are not conclusive on appeal, but are presumptively correct and will not be disturbed unless serious mistake has been made in the consideration of the evidence. Humphrey v. Bankers Mortgage Co., 10 Cir., 79 F.2d 345; Gaskins v. Bonfils, 10 Cir., 79 F.2d 352; Freiberg v. Pierce, 10 Cir., 83 F.2d 961; Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L. Ed. 356; Thomas v. Whitney, 186 Ill. 225, 57 N.E. 808; Schlussel v. Hays, 89 Or. 463, 174 P. 722; and 3 Corpus Juris Secundum, Agency, § 145, p. 25. The finding is supported by substantial evidence. No serious mistake appears in the consideration of such evidence. Accordingly, it is not open to the challenge directed against it.

As to the second contention that (a) when the certificate of competency was revoked in February, 1929, restrictions were immediately reimposed upon all property then owned by Red Corn, and (b) any indebtedness incurred while the certificate was in effect must thereafter be submitted to the Secretary of the Interior and be approved by him, and (c) the indebtedness represented by the four notes in question

is unenforceable because it has not been approved, the Act of February 27, 1925, 43 Stat. 1008, 25 U.S.C.A. § 331, being relied upon to sustain same. Section 1 thereof authorizes the Secretary of the Interior to pay quarterly to each adult member of the Osage Tribe having a certificate of competency his pro rata share of interest on trust funds, bonus received from the sale of oil and gas leases, royalties from such leases, and any other money received during the quarter, including all money received prior to passage of the act, to pay to adult members not having a certificate of competency $1,000 per quarter, so long as the accumulated income is sufficient for that purpose, to pay specified sums for the maintenance and education of enrolled or unenrolled minor members of the tribe, to invest the remainder, after payment of taxes, in specified bonds and real estate loans, and to recapture money then in the hands of legal guardians theretofore paid them in excess of $4,000 per annum for adults and $2,000 per annum for minors under the Act of March 3, 1921, 41 Stat. 1249. Section 2 provides that all funds of restricted Osages of one-half or more Indian blood inherited or bequeathed to them accruing to their credit, and which are subject to supervision as provided in the preceding section, may in the discretion of the Secretary, and when deemed for the best interest of such Indians, be paid to the administrators or executors of the estates of deceased Osages, or direct to their heirs or devisees, with the further provision that the Secretary shall pay to administrators and executors of such estates sufficient to pay all lawful indebtedness and costs and expenses of administration. Section 3 provides that lands devised to members of the Osage Tribe of one-half or more Indian blood, or who do not have certificates of competency, under wills approved by the Secretary, and lands inherited by such Indians, shall be inalienable unless conveyed with the approval of the Secretary; and further, that property purchased in the manner previously set forth shall not be subject to the lien of any debt, claim, or judgment except taxes, nor shall it be alienated without the approval of the Secretary. Section 4 reads: "Whenever the Secretary of the Interior shall find that any member of the Osage Tribe of more than one-half Indian blood, to whom has been granted a certificate of competency, is squandering or misusing his or her funds, he may revoke such certificate of competency after notice and hearing in accordance with such rules and regulations as he may prescribe, and thereafter the income of such member shall be subject to supervision and investment as herein provided for members not having certificates of competency to the same extent as if a certificate of competency had never been granted: Provided, That all just indebtedness of such member existing at the time his certificate of competency is revoked shall be paid by the Secretary of the Interior, or his authorized representative, out of the income of such member, in addition to the quarterly income hereinbefore provided for: And provided further, That such revocation or cancellation of any certificate of competency shall not affect the legality of any transactions theretofore made by reason of the issuance of any certificate of competency."

 The land in question here belonged to, and the title thereto was vested in, Sands, not a member of any Indian tribe, at the time the act of February 27, 1925, became effective. Said Red Corn purchased it in January, 1928, paying for it with securities which he inherited from his father and with notes and a mortgage then executed by him to secure payment of same. His (Red Corn's) father was a restricted Indian. He executed a will which was approved by the Secretary; said Red Corn still possessing his certificate of competency at the time the securities were distributed to him in accordance with the terms of the will. These were freed of restrictions when they passed to his ownership. La Motte v. United States, 254 U.S. 570, 41 S. Ct. 204, 65 L.Ed. 410; U. S. v. Johnson, 10 Cir., 87 F.2d 155; Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353. Section 3 of the act had no application because it deals first with land devised to members of the tribe of one-half or more Indian blood or who do not have certificates of competency, and lands inherited by such Indians; and second, with property of Osages not having certificates of competency purchased as specified in the act. The Act of March 2, 1929, 45 Stat. 1478, did not reimpose restrictions upon the land prior to the termination of the certificate of competency. The first section thereof merely extended restrictions theretofore or thereafter imposed to January 1, 1959. It does not purport to impose or reimpose any restrictions that did not theretofore exist. It only continues until 1959 restrictions and supervisory control of

United States already existing. There is nothing in the Act of February 27, 1925, and March 2, 1929, which can properly be construed as recapturing any supervision or control over the property involved in this action.

■ At the time the certificate of competency was revoked, said Red Corn was vested with title to the said land, and valid notes of $18,710.88, secured by a valid mortgage lien thereon outstanding and existing. The revocation did not affect the rights of the owner and holder of such notes and mortgage.

Section 4 of 1925 Act, 25 U.S.C.A. § 331, expressly provides that revocation shall not affect the validity of any transaction theretofore occurring made by reason of the certificate. .

■ The Act of April 18, 1912, 37 Stat. 86, expressly subjects estates of Osage Indians to the jurisdiction of the county courts in Oklahoma in probate matters. Work v. U. S., 266 U. S. 161, 45 S.Ct. 39, 69 L.Ed. 223; Williams v. Clinton, 10 Cir., 83 F.2d 143; Globe Indemnity Company v. Bruce, 10 Cir., 81 F.2d 143, and Mudd v. Perry, 8 Cir., 25 F.2d 85. In the absence of restrictions, the approval of the claims predicated upon the notes by the administratrix and their allowance by the county court established the claims as valid indebtedness against the estate. White House Lumber Co. v. Howard, 142 Okl. 163, 286 P. 327, Oil. Well Supply Co. v. Cremin, 143 Okl. 57, 287 P. 414, 68 A.L.R. 1471, and In re Hibdon's Estate, 102 Okl. 145, 228 P. 154. See, also, Mutual Life Ins. Co. v. Farmers' & Mechanics' National Bank, C.C., 173 F. 390.

■ The district court had jurisdiction of the subject-matter in the foreclosure suit, and of the action against the administrator without joinder of the heirs as parties defendant. McClung v. Cullison, 15 Okl. 402, 82 P. 499; Jameson v. Goodwin, 43 Okl. 154, 141 P. 767; Treese v. Spurrier Lumber Co., 115 Okl. 188, 242 P. 235, and Hearfield v. Bridge, C.C., 67 F. 333; Hearfield v. Bridges, 9 Cir., 75 F. 47. The order of the county court dated March 22, 1933, did not make it necessary to join the heirs, not vesting them with title to the land covered by the mortgage, but merely determining their status as heirs and fixing their undivided interest in the estate. That interest was subject to existing valid liens. Section 1194, Oklahoma Statutes 1931, 58 Okl.St.Ann. § 252, as interpreted in the cases just cited, makes it clear that the action to foreclose the mortgage lien could be maintained against the administrator without the heirs being parties. The decree rendered in that action was valid. The sale passed title to Sands. He thereafter executed a valid mortgage to the bank.

■ As to the transaction by said Red Corn when the mortgage indebtedness was incurred he was under the law relative thereto sui juris. On February 19, 1929, when the certificate of competency was revoked, said notes and mortgage on said land securing the same then outstanding, unpaid, and unreleased, the owners and holders thereof may rely upon acts of Congress existing at the time of the transaction, of which section 4 of said Act of February 27, 1925, 25 U.S.C.A. § 331, provides that all just indebtedness of the said Red Corn existing at the time his certificate of competency was revoked shall be paid by the Secretary of the Interior or his authorized representative out of the income of such member, in addition to the quarterly income hereinbefore provided for, and that such revocation or cancellation of any certificate of competency shall not affect the legality of any transactions theretofore made by reason of issuance of any certificate of competency. Such question is a matter for judicial determination. Work v. United States, 261 U.S. 352, 43 S.Ct. 389, 67 L.Ed. 693. Until such indebtedness has been paid, the appellant may not invoke the relief for which it has herein prayed.

The decree is affirmed.